## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL WEBB | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| USAA CASUALTY INSURANCE | : | |
| | : | |
| *Defendant.* | : | NO. 24-03568 |

### MEMORANDUM

**Perez, J.**                                                                                                    **December 4, 2025**

Plaintiff, Daniel Webb, commenced this action against Defendant USAA Casualty Insurance, alleging breach of contract for failure to pay underinsured motorist ("UIM") benefits. In his Complaint, Plaintiff alleges that he suffered bodily injury from a September 24, 2022 car accident with an underinsured third-party tortfeasor and that Defendant is therefore obligated to provide UIM coverage. Before the Court is Defendant's motion for summary judgment, in which Defendant argues that no genuine dispute of material fact exists regarding whether the accident proximately caused Plaintiff's shoulder injury. A reasonable jury could find that the accident was a substantial factor in causing Webb's shoulder injury, so the Court will deny the motion.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On September 24, 2022, third-party tortfeasor George Haegele failed to stop at a red light and collided with Plaintiff's vehicle. ECF No. 15-3 at 6. Plaintiff did not suffer any injuries during this accident. However, he testified that he aggravated a pre-existing shoulder injury due to the

accident, as his replacement rental vehicle did not have a lift and required him to repeatedly lift himself and his wheelchair. ECF No. 15-1 at 5.

Before this 2022 car collision, Plaintiff was in a 2010 hunting accident that paralyzed his lower extremities. ECF No. 15-3 at 12. He has used a wheelchair since then. ECF No. 15-1 at 6. The vehicle he owned from 2011 to 2020 did not have a lift, so Plaintiff developed shoulder injuries from repeatedly lifting his wheelchair in and out of the car. ECF No. 15-2 at 4. In 2020, Plaintiff purchased a vehicle with a wheelchair lift to avoid further aggravating his shoulder pain. *Id.* at 3. At his deposition, he testified that by September 2022, he "wasn't really experiencing any shoulder injury or pain because . . . [he] didn't have to take the wheelchair apart in that manner." ECF No. 15-1 at 5.

Plaintiff's lift-equipped vehicle was not drivable as a result of the September 24, 2022 accident. ECF No. 15-3 at 9-10. He testified that Defendant, his insurer, refused to pay for a rental with a wheelchair lift like he requested. ECF No. 15-2 at 5. Roughly a week after the accident, Plaintiff began using a rental car that did not have a lift and required him to fold and lift his wheelchair into the vehicle. *Id.* at 3, 5. According to the report of Plaintiff's expert Scott Sexton, M.D. ("Dr. Sexton"), Plaintiff began feeling left shoulder pain within three to four days of getting the rental car. ECF No. 15-3 at 16. The report also stated that he drove the rental car for forty-five days. *Id.*

Several doctors who treated Plaintiff between January 2023 and March 2024 opined that Plaintiff aggravated his left shoulder injury by transferring himself and his wheelchair in and out of the rental car. ECF No. 15-3 at 11-22. In a February 2023 letter, Plaintiff's physician Dr. Daniel Moon stated that "[Plaintiff] has left shoulder pain due to underlying rotator cuff dysfunction/inflammation that was further exasperated [sic] following his car accident September

2

2022. Unfortunately, since Mr. Webb did not have access to his accessible vehicle following the accident his shoulder injuries were aggravated during transfers in and out of the rental car provided." *Id.* at 11. Orthopedic surgeon Dr. Avallone examined Plaintiff in January 2023. *Id.* at 12. Dr. Avallone noted that Plaintiff "does notice a difference in his shoulder discomfort since he has been using the rental car and not his van." *Id.* at 12. In his March 2024 report, Dr. Sexton also opined that "Mr. Webb sustained an aggravation of his chronic and underlying left shoulder condition due to repetitive strenuous activities including transfers into his rental vehicle and pulling a heavy wheelchair into the vehicle multiple times a day." *Id.* at 19. Furthermore, Dr. Sexton reported that treating Plaintiff's left shoulder aggravation would include "a total shoulder arthroplasty with expected cost to include postoperative rehabilitation of $100,000." *Id.*

According to Plaintiff, he agreed to settle with Mr. Heagle's insurer State Farm for $90,000 in July 2023. ECF No. 15-6 at 3. Plaintiff also testified that he formally requested coverage under his insurance policy with Defendant because Mr. Heagle's bodily insurance policy limits did not fully cover treatment costs for his injuries. *Id.* at 3, 5. Plaintiff has Underinsured Motorist ("UIM") benefits in his USAA insurance policy, which states:

> 1. We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of BI [bodily injury] sustained by a covered person and caused by an auto accident.
> 2. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the underinsured motor vehicle.

ECF No. 15-5 at 5. Plaintiff testified that he provided Defendant a formal demand package with relevant medical records to request payment of his UIM benefits. ECF No. 15-6 at 4-5. Defendant has not made this payment. *Id.* at 5. In July 2024, Plaintiff filed the present lawsuit. *Id.* at 7. Defendant moved for summary judgment in August 2025. ECF 16.

Defendant does not dispute that the car accident occurred or that Plaintiff's use of the rental car caused his shoulder injury. *Id.* at 1. However, the parties dispute whether the underinsured motor vehicle accident was a proximate cause of Plaintiff's injuries.

II. **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of [its] burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citations omitted). If the nonmovant bears the burden of proving an issue, the movant can meet its burden by demonstrating that the nonmovant "fails to make a showing sufficient to establish the existence of an element essential" to that issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must review the facts and draw inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

III. **LEGAL DISCUSSION**

Plaintiff asserts that Defendant breached its insurance contract by failing to pay his UIM benefits coverage. Under Pennsylvania law, a plaintiff bringing a breach of contract claim must show (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999). At issue here is the second element—whether Defendant's failure to pay UIM benefits coverage breached a duty imposed by the contract. To prove the second element and recover UIM payments, Plaintiff must show he could recover against the at-fault driver. In other words, the insured only triggers their UIM benefits if they are legally entitled to recover damages

from the underinsured vehicle owner or operator. *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1144 (Pa. Super. Ct. 2007).[1] Therefore, a plaintiff seeking UIM coverage must prove the four elements of a negligence claim—duty, breach of duty, causation, and damages—against the vehicle owner or operator. *Gutteridge v. A.P. Green Servs, Inc.*, 804 A.2d 643, 654 (Pa. Super. Ct. 2002). The causation element includes both actual and proximate causation. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1287 (Pa. Super. Ct. 2005).

Here, Plaintiff's UIM policy states Defendant must "pay for compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury." ECF No. 15-5 at 5. Given the policy's prerequisite of entitlement to recovery, Defendant is only obligated to pay the UIM coverage payments if Plaintiff proves the four negligence elements against the at-fault driver, Mr. Heagle.

Three of the four negligence elements are not in dispute. Defendant recognizes "that the at-fault driver had a duty to Plaintiff with respect to the motor vehicle accident and breached that duty" and that a harm occurred. ECF No. 16 at 5. Defendant also does not appear to dispute that the subject accident was the cause in fact of Plaintiff's harm, and specifically "that Plaintiff

---

[1] The Pennsylvania Superior Court explains the intersection between a UIM insurer's contractual obligations and tort law:

> U-claims do undeniably have certain components found in first party claims. They are like first party claims in that the insured claimant is often, but not always, making a direct claim against his own insurer under his own policy . . . . Beyond those threshold connections and duties, however, and when it turns to issues such as liability, damages, coverage or even procedure, U-claims become very much like third party claims. . . .
>
> U-claims are like third party claims because the contract of insurance sets them up that way. The traditional insuring agreement contained in the Uninsured and/or Underinsured Motorist section of the policy provides that the insurer agrees to pay to the insured the amount that the insured would otherwise be legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle. Under that insuring agreement, the amount of the benefits the insured is entitled to recover from the insurer is measured by the third party tort recovery the insured would have been entitled to from the tortfeasor if that tortfeasor . . . had enough such coverage.

*Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1144 (Pa. Super. 2007).

suffered a torn rotator cuff in connection with the use of the rental car following the subject accident." *See id.* at 5-6. Thus, the sole question here is whether a jury could reasonably conclude that the subject accident proximately caused Plaintiff's shoulder injury.

This UIM proximate cause issue appears to be one of first impression. The Court is not aware of any Pennsylvania or federal decision addressing a situation in which a UIM plaintiff's injury occurred *after* the underlying motor-vehicle accident. Although certain workers' compensation cases discuss whether use of a van lift constitutes a necessary accommodation, the Court has located no tort case in which the plaintiff's injury arose from transferring into or out of a wheelchair. *See Mickey v. City Wide Maint.*, 996 S.W.2d 144 (Mo. Ct. App. 1999), *overruled by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. 2003); *Phillips Petroleum Co. v. Carter*, 914 P.2d 677 (Okla. Civ. App. 1995). There is one Iowa UIM case in which a car accident exacerbated the plaintiff's preexisting conditions. *See Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565 (Iowa 1997). However, the exacerbating injury in this case occurred during the car accident, unlike Plaintiff's injury in this case. *Id.*

### A. Analysis of Proximate Causation

The Court turns to whether the evidence, viewed in a light most favorable to Plaintiff, would allow a jury to conclude the subject accident proximately caused his shoulder injury. An act is a proximate cause of a plaintiff's injuries if it was a "substantial factor" in bringing about this harm. *Urb. v. Allstate Fire & Cas. Ins. Co.*, No. CV 20-3490, 2021 WL 4774866, at *8 (E.D. Pa. Oct. 13, 2021). Under Pennsylvania law, courts consider three factors in analyzing substantial factor:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

>  (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>  (c) lapse of time.

*Id.* at 9 (quoting *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1234 (Pa. 1983) (citing Restatement of Torts, Second § 433 (1965))).

### 1. Number of Contributing Factors

Although multiple factors may have contributed to Plaintiff's injury—the car accident and the use of the rental car—summary judgment is not appropriate in part because a jury could find the car accident was the primary factor.

Prong (a) of the proximate cause test weighs against summary judgment where a jury could reasonably find that the tortfeasor's conduct was the *primary* factor causing the plaintiff's harm, even if other contributing factors exist. *See Urban*, 2021 WL 4774866, at *11. By contrast, prong (a) supports summary judgment where a lengthy and attenuated causal chain exists, such that numerous other actors had opportunities to detect or prevent harm. See *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 603 F. Supp. 3d 195, 207 (E.D. Pa. 2022), *aff'd*, No. 22-1998, 2023 WL 5227103 (3d Cir. Aug. 15, 2023).

For example, *Urban* involved a utility pole that collapsed and injured a repair worker after a car struck an interconnected pole. 2021 WL 4774866, at *1-2. Several explanations existed for why the pole fell, such as its physical condition and the weight of the cables it supported. *Id.* at 3. However, circumstantial evidence suggested this car collision could be the principal cause. *Id.* at 11. While the court did not find that this accident was *actually* the principal cause of the pole's collapse, it held that a jury could reasonably reach that conclusion given the way the poles were connected. *Id.* In *Russell*, on the other hand, a nonprofit erroneously certified a foreign medical graduate. 603 F. Supp. 3d at 200. Roughly twenty years later, the graduate deceived patients and

caused emotional distress. *Id.* at 199, 207. The court held that the certification was not a substantial factor because multiple independent bodies—residency programs, state licensing boards, and hospitals—were required to review the graduate's competence before he could treat patients. *Id.* at 207. Given the extensive intervening oversight, the initial certification could not reasonably be viewed as the primary cause of the patients' injuries. *Id.* at 206-207.

Here, Plaintiff has presented sufficient evidence to raise a triable issue as to whether the accident was the primary factor leading to his shoulder injury, even amidst other contributing factors. Plaintiff only required a rental car because of the accident. At the time, he already knew repetitively lifting his wheelchair would aggravate his injury based on his experience with his prior 2011 vehicle. ECF No. 15-2 at 4. Accordingly, Plaintiff testified that he asked Defendant for a rental car with a ramp and that Defendant refused to pay for this accommodation. *Id.* at 4- 5. Based on these facts, a jury could reasonably conclude the accident was the primary reason Plaintiff drove the rental car and aggravated his shoulder injury. Alternative contributing factors do not preclude the jury from reaching this conclusion, just as *Urban* let the jury decide why Pole B collapsed amidst multiple explanations. Unlike in *Russell*, there is no evidence of intervening actors who reasonably could have prevented Plaintiff's harm. Any dispute on this point is a genuine issue of material fact, making summary judgment inappropriate.

### 2. Continuous and Active Forces

Similarly, a reasonable jury could find proximate causation by concluding the rental car was a foreseeable event following the driver's negligent act.

Prong (b) weighs against summary judgment where a reasonable jury could find the negligent act led to foreseeable events that caused the ultimate injury. *See Urban*, 2021 WL 4774866, at *11. Notably, it is not the final harm that must be foreseeable; instead, the foreseeable

events that follow the negligence and cause the injury must be "common sensical." *Id*. Furthermore, the uniqueness or unpredictability of a disability also has no bearing on proximate causation. "[N]egligence causing aggravation of a pre-existing condition subjects a tortfeasor to the same degree of liability as the infliction of an original wound." *Torres v. United States*, No. 5:21-CV-04953, 2023 WL 2368728, at *22 (E.D. Pa. Mar. 6, 2023) (citing *Fretts v. Pavetti*, 422 A.2d 881, 885 (Pa. Super. Ct. 1980)). However, prong (b) supports summary judgment if the negligent act is harmless without intervening forces. *See Russell*, 603 F. Supp. 3d at 207.

For example, *Urban* found it "'common sensical' that an accident involving a utility pole would require repair," and this foreseeable work on the interconnected pole "ultimately contributed to Pole B's fall," which injured the plaintiff. 2021 WL 4774866, at *11. The foreseeability of this work weighed against summary judgment. *Id.* In *Russell*, the nonprofit's certification did set the doctor on a path to treating patients and eventually causing their harm. 603 F. Supp. 3d at 207. However, the certification "was harmless unless others, including a residency program, a state licensure board, and a hospital that offered admitting privileges, acted on it." *Id.* Because the certification alone could not cause the harm, the court found that prong (b) supported granting summary judgment. *Id.*

Here, a jury could reasonably find that foreseeable events stemming from the car accident caused Plaintiff's harm. It is "common sensical" that a car accident victim would need to get a rental car, and this rental was the source of Plaintiff's injury. ECF 16 at 5; *Urban* 2021 WL 4774866, at *11. Under *Urban*, only the Plaintiff's need for the rental car must be a foreseeable result of the car accident—not the shoulder injury itself. Additionally, summary judgment is inappropriate here because there is a genuine dispute of fact about whether the accident sufficiently caused Plaintiff's injury, unlike the certification in *Russell*. The accident damaged Plaintiff's car

to the point where he needed a rental vehicle, and Plaintiff testified that Defendant refused to pay for one with a lift. ECF No. 15-3 at 9-10; ECF No. 15-2 at 5. A jury could reasonably find that these factors were sufficient to cause Plaintiff's shoulder injury and that they were in place from the point of the accident, not intervening factors. *See Rabutino v. Freedom State Realty Co., Inc.*, 809 A.2d 933, 942 (Pa. Super. Ct. 2002) (explaining that an act is not an intervening factor if it is a normal result of the negligence and that an act is an intervening factor if it exists independently of the negligence). Because a jury could reasonably find the accident was sufficient to cause the harm, prong (b) supports denying summary judgment.

### 3. Lapse of Time Between Negligent Act and Harm

The final prong also does not support summary judgment here because only two weeks lapsed between the car accident and Plaintiff's ultimate injury—a lapse of time that does not preclude a finding of proximate cause. While no Pennsylvania appellate case sets a bright-line temporal cutoff, decisions applying Pennsylvania law reflect that the significance of temporal separation depends on the surrounding causal chain and whether other contributing forces render the connection too attenuated to present a jury question. Consistent with that flexible approach, courts in this District applying Pennsylvania law have found proximate-cause questions suitable for the jury across a wide range of temporal gaps—including approximately one hour in *Urban v. Allstate Fire & Cas. Ins. Co.*, No. 20-3490, 2021 WL 4774866, at *11 (E.D. Pa. Oct. 13, 2021), and two years in *First Sealord Surety, Inc. v. Durkin & DeVries Ins. Agency*, 918 F. Supp. 2d 362, 376–77 (E.D. Pa. 2013). By contrast, courts have found the causal connection too attenuated where the harm occurred many years after the alleged negligence amid substantial intervening forces. *See Russell v. Educ. Comm'n for Foreign Med. Graduates*, 603 F. Supp. 3d 195, 207 (E.D. Pa. 2022) (finding no proximate cause where a decade-plus lapse, coupled with multiple intervening steps,

undermined substantial-factor causation). None of these decisions suggests that prong (c) imposes a bright-line temporal cutoff; instead, the lapse of time is evaluated in context alongside the causal sequence and other contributing forces.

Here, approximately two weeks elapsed between the car accident and the beginning of Plaintiff's harm. He rented the car one week after the accident, and he testified that he started feeling pain in his shoulder within three to four days of using the rental car. ECF No. 15-2 at 3, 5; ECF No. 15-3 at 16. This time frame is not as short as the one-hour lapse in *Urban*, but it is much shorter than the two-year lapse in *First Sealord*. Two weeks is also significantly shorter than the decade-plus lapse in *Russell*. On this record, the time interval is short and closely linked to the post-accident need for substitute transportation, and it does not render the causal connection so remote that no reasonable jury could find the accident a substantial factor. Accordingly, prong (c) favors denying summary judgment.

### B. Proximate Causation Presents a Jury Question on this Record

Applying the substantial-factor test to the facts of this case, a reasonable jury could find that the accident proximately caused Plaintiff's shoulder injury. The record contains sufficient factual disputes regarding whether the accident set in motion a continuous chain of events that culminated in the injury. Accordingly, the issue is properly reserved for the jury. At this stage, the Court determines only that Defendant has not carried its Rule 56 burden to demonstrate the absence of a genuine dispute of material fact. The Court does not decide whether Plaintiff is ultimately entitled to UIM benefits.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.